## ALLERTON v. ELDRIDGE.

1. **Practice**: APPEAL: FROM INTERLOCUTORY ORDER. The statute does not give a right of appeal from an order granting a change of venue, but an appeal properly taken from an interlocutory order affecting substantial rights brings up for review all rulings theretofore made in the action and duly excepted to.

2. ——: CHANGE OF VENUE. A change of venue may be had on the ground of the prejudice of a judge, on a proper showing, although the term of the presiding judge expires before the next ensuing term of court, which is the first term at which the case can be tried.

3. **Attachment**: GROUNDS FOR: FACTS CONSIDERED. Facts considered and held insufficient to authorize an attachment.

4. ——: RELEASE OF: BOND. A bond given by an attachment defendant in whose custody the attached property is left, conditioned that he will return the same on demand to the sheriff, does not constitute a statutory delivery bond which will discharge the attachment.

| | |
|---|---|
| 56 | 709 |
| 86 | 89 |
| 56 | 709 |
| 99 | 157 |
| 101 | 62 |
| 56 | 709 |
| 105 | 733 |
| 56 | 709 |
| 109 | 47 |

*Appeal from Jasper Circuit Court, also Polk Circuit Court.*

### FRIDAY, OCTOBER 21.

ACTION IN EQUITY. The plaintiff filed her petition in the Circuit Court of Jasper county, asking, among other things, for a specific attachment against certain property, and also for a general attachment. A writ was issued containing two mandates, one for a specific attachment and one for a general attachment. Afterward the defendant filed an affidavit that he was about to file a motion to dissolve the specific attachment. He also filed a motion for a change of venue to the District Court. The plaintiff objected to any change, and especially to a change to the District Court, and filed an affidavit of prejudice of the District Judge. The Circuit Court granted a change and ordered the cause to be transferred to the Circuit Court of Polk county. The plaintiff gave notice of an appeal, and filed a supersedeas bond. The proper papers were filed by the defendant in the Circuit Court of Polk county. A copy of the notice of appeal and supersedeas

bond were filed in the same court by the plaintiff, and a motion was made by her for a postponement of all proceedings in the cause pending the appeal, which motion was overruled and the plaintiff excepted. The defendant then filed a motion to dissolve both attachments, which motion was sustained except as to a portion of the property held under the general attachment, to which ruling the plaintiff excepted. She appeals from both rulings excepted to.

*Ryan Bros.*, for appellant.

*S. S. Patterson* and *Nourse & Kauffman*, for appellee.

ADAMS, CH. J.—I. The first question presented is as to whether the plaintiff had a right to appeal from the order

1. PRACTICE: appeal: from interlocutory order.

granting a change of venue at the time she attempted to appeal. If she had, then her appeal, a supersedeas bond having been filed, should have had the effect to stay proceedings, and the Circuit Court of Polk county erred in not sustaining the plaintiff's motion to postpone.

An appeal may be taken from " an order made affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken." Code, § 3164, subdivision 1. The plaintiff insists that an order granting a change of venue is of the kind above described.

But sending an action to another court to be tried does not determine the action, nor does it prevent a judgment from which an appeal may be taken. In our opinion the statute cited does not give plaintiff the right of appeal which she claims.

But the plaintiff cites to us subdivision 2 of the same section, in which it is provided that an appeal may be taken from " a final order made in a special proceeding affecting a substantial right therein." It is equally evident to our mind

that the order granting a change of venue is not the kind described in this provision.

There are some other orders from which an appeal may be taken, but the plaintiff does not claim that the order in question is one of them, and it is sufficient for us to say that we think it is not.

It follows, then, that at the time of the action of the Circuit Court of Polk county no appeal had been taken which the court was bound to respect, and that the court did not err in overruling the plaintiff's motion to grant a postponement of proceedings pending the appeal.

Now, while it appears to us that the plaintiff had no right of appeal from the order granting the change of venue at the time she attempted to appeal therefrom, yet as a right of appeal has arisen from an order subsequently made; viz., the order dissolving the specific and general attachments, it appears to us that we may properly review any other error which the appellant claims was made in the case. Because the statute does not provide for an appeal from an order granting or refusing a change of venue, it does not follow that the action of the court in granting or refusing such change is not reviewable. The right to such review is expressly recognized in *Jones v. The C. & N. W. R'y Co.*, 36 Iowa, 68, and *Ferguson v. Davis county*, 51 Iowa, 224. An appeal after final judgment will bring up for review all the rulings in the case which have been properly excepted to. And we see no reason why an appeal properly taken before final judgment may not bring up for review all the rulings in the case theretofore made and properly excepted to. The reason for not allowing an appeal directly from each intermediate ruling not affecting a substantial right, as the admission or exclusion of evidence, etc., is that the allowance of such appeals would too greatly postpone the final disposition of the case. *Richards v. Burden*, 31 Iowa, 305. Subject to this consideration it is evidently important that all errors should be corrected as early as possible. The statute

does not provide expressly, nor we think by implication, that these lesser intermediate rulings shall not be reviewable until after final judgment. It merely fails to provide that the party claiming to be aggrieved by the rulings shall have a right of appeal by reason of the rulings alone, and in advance of a ruling affecting a substantial right.

In our opinion, then, the case having been properly brought to us on appeal, the ruling upon the motion for a change of venue may be reviewed as well as the ruling upon the motion to discharge the attachments.

The motion for a change of venue was based upon the ground of the prejudice of the circuit judge. The motion, it appears, was filed in vacation, and but a few days before the term of office of the presiding judge was to expire by limitation, when he was to be succeeded by another person, and no term of court was to intervene. The plaintiff insists that in such case the prejudice of the judge does not constitute a ground for a change of venue.

2. ——: change of venue.

While it might have been certain to the judge to whom the application was made that no trial could be had, yet it was not certain that motions might not be made which he would be called to rule upon at chambers. This consideration alone, we think, was sufficient to entitle the defendant to a change of venue. It is true that a change of venue is called in the Code a change of place of trial; but we cannot think that the design was to allow a judge to whom objection is made to retain a case for the disposition of all preliminary questions before granting a change of venue, where the application had been made in the mode in which the statute requires. Indeed, where the objection is to the court, the statute expressly contemplates that a change shall be had before the issues are made up and before the case is ready for trial. It is not true then, as the plaintiff contends, that a change can be had for no purpose other than the trial.

We may say further that, if we could see no reason whatever in the nature of things for a change in this case, we

.should hesitate, in view of the imperative language of the statute, to hold that a change should not be granted where the statute providing for a change had been fully complied with.

In our opinion the motion for a change of venue was properly sustained.

II. We come now to inquire whether the motion to discharge the attachments was properly sustained.

The plaintiff's assignor, one A. M. Allerton, had entered into a contract with the defendant for an exchange of prop-
3. ATTACH-
ment:
erty, whereby he sold to defendant 2,100 acres of
grounds for:
facts con-
land in the counties of Jasper and Marshall, and
sidered.
certain farming utensils, horses and other personal property; and in consideration thereof the defendant sold and transferred to the plaintiff's assignor certain stock in the East River Gas Light Co., of Long Island City, whose par or nominal value was $95,000, and the defendant was to pay off the floating indebtedness of the company, which was stated to be $2,500. He also agreed to procure and deliver to the plaintiff's assignor the remaining stock of said gas company, whose par or nominal value was $5,000, but whose actual or market value was $2,250, which stock was to be delivered at the time the deed of the land should be delivered, which was to be done on or before December 10, 1879, or in case of failure the defendant was to pay therefor the value thereof, viz., forty-five dollars per share. The plaintiff's assignor contracted also in the same instrument to sell to the defendant certain hogs, shoats, steers, calves, cows, heifers and a Durham bull, for which the defendant was to pay him fifteen thousand dollars in money, and the title to the stock was not to vest in the defendant except as the same was paid for. After the plaintiff succeeded to all the rights of A. M. Allerton under the contract, the defendant executed to her a chattel mortgage to secure the payment of the said sum of $15,000. She now brings this action for an accounting, averring, among other things, that the defendant falsely rep-

resented the floating indebtedness of the gas company to be much smaller than it is; that it is in fact $9,000, and that the defendant refuses to pay the same and refuses to allow her to pay the same until there has been an adjudication thereon. She also avers that the defendant has not delivered to her the remaining stock of the par value of $5,000 nor any part thereof, and that he is not able to deliver the same and does not design to do so. She also avers that he has failed to pay certain interest upon mortgages upon the property of the gas company which he agreed to pay, and which she has paid. She avers that the defendant is a non-resident of Iowa; that the indebtedness was incurred for property obtained under false pretenses, and that nothing but time is wanting to fix an absolute indebtedness. She also avers that she has reason to believe and does believe that the defendant, unless restrained by court, will dispose of said property fraudulently and for the purpose of putting the same beyond her reach. She asks judgment for the sum of $12,500 and a special attachment against the real and personal property of the defendant received through the contract, and a general attachment against the goods and chattels of the defendant generally.

An order was granted by the judge that a writ of attachment issue as prayed, and a writ was accordingly issued and levied.

We will proceed first to inquire as to whether the plaintiff was entitled to a specific attachment.

Section 3000 of the Code provides for a specific attachment of personal property where the plaintiff has a lien upon the property, and where it satisfactorily appears from the petition, verified on oath or by affidavit, or the proofs in the cause, that the plaintiff has a just claim, and that the property has been or is about to be sold, concealed, or removed from the State, or where the plaintiff states on oath that he has reasonable cause to believe and does believe that unless prevented by the court the property will be sold, concealed or removed from the State.

This provision evidently affords no warrant for a specific attachment of real estate.   Whether it affords a warrant for a specific attachment of the personal property must depend among other things upon whether the indebtedness sought to be recovered is a lien upon the property.   The indebtedness sought to be recovered is no part of the $15,000 arising under the second part of the contract, and for which a chattel mortgage was given.   It consists of the $9,000 alleged to be the floating indebtedness of the gas company and $2,250 alleged to be due for failure to deliver the gas stock remaining to be delivered, and $950 alleged to be due by reason of certain interest paid by plaintiff, but which should have been paid by the defendant.

As to the $9,000, we think it is sufficient to say that it is not alleged that the plaintiff has paid it, nor is there any allegation in respect to it upon which a recovery can be based. We are of the opinion also that no recovery can be had for the $2,250.   Until the expiration of the time within which the defendant might deliver the stock no money claim arose for want of delivery.   The deed of the lands was to be delivered on or before December 10, 1879, and the stock was to be delivered within one year thereafter.   This action was brought November 15, 1880.   The defendant had at least a year from the delivery of the deed, if the deed was not delivered later than December 10, 1879.   It does not appear that a deed of all the lands has been delivered yet.   The defendant had, then, until December 10, 1880, at least, in which to perform his contract.   The action was brought before that time.   It is not true that nothing but time was wanting to create an absolute indebtedness.   Time and a failure to deliver the stock were wanting.

So far as the item of $950 is concerned, being the alleged indebtedness for the payment of interest, there is no pretense that the plaintiff had a lien.   She may have been entitled to a general attachment for this indebtedness, and that she is allowed to have, and no question is raised by either party in

regard to this item. Having reached the conclusion that the other alleged indebtedness has no existence, it would be improper to inquire whether the plaintiff would have a lien therefor if it did exist as alleged.

But the plaintiff claims that she is entitled to a specific attachment under section 3001 of the Code. That section provides for such attachment where the petition shows a fraudulent purchase of the property, and where the action is brought to vacate the contract and have a restoration of the property.

But this action was not brought for that purpose, and the section has no applicability to the plaintiff's case.

She contends, however, that the defendant was estopped from moving to discharge the attachment, whatever grounds there might otherwise have been for such discharge, because the defendant gave a delivery bond for the property and received the same into his possession. A copy of the bond and receipt is set out. The plaintiff's theory is that by the execution of the bond, signed as it was by the defendant and another person, and by the receipt of the property, the attachment was discharged, and hence there was nothing upon which the motion to discharge could operate.

**4. ——: release of bond.**

Without considering whether she could be prejudiced by the sustaining of the motion if the plaintiff's theory is correct, we have to say that we do not think that the attachment was discharged by the giving of the bond and receipt. The statute, Code, section 2994, prescribes the kind of bond that shall be given in order to effect the discharge of the attachment. It must be to the effect that the defendant will perform the judgment of the court. Such bond becomes a new and substituted security for the attachment. The bond given was not such bond. It contained no obligation to perform the judgment of the court, but merely to return the property. It was such bond as the sheriff might have taken from any person to whom he had entrusted the property for safe

keeping.   The property consisted of hogs, horses, corn, hay and property that needed care.   The reason for giving the bond as recited therein is that the property needed care.   It was competent for the sheriff to arrange with the defendant to take the property and bestow the needed care.   The receipt provided that the property should be returned to the sheriff on demand for justifiable cause, of which the sheriff was to be the judge.   He might then take possession.   This, we think, shows very clearly that the lien of the attachment was not deemed to be discharged.   The motion to discharge, then, was in order, and we think it was properly sustained so far as it was sustained.

AFFIRMED.